Mary Kaye SUTTER, Plaintiff,

v.

FIRST UNION NATIONAL BANK OF VIRGINIA, INC., and Joan Corcoran, Defendants.

Action No. 2:95cv1205.

United States District Court, E.D. Virginia, Norfolk Division.

July 22, 1996.

754

Stephen C. Swain, Timothy W. Dorsey, Clark & Stant, Virginia Beach, VA, for Plaintiff.

Samuel M. Brock, III, Eric W. Schwartz, Michael S. Hart, Mays & Valentine, Norfolk, VA, for Defendants.

### OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

This matter is before the court upon defendants' motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Counts II, III, and IV of the complaint and to dismiss plaintiff's claim for punitive damages. For the reasons discussed below, the courts **GRANTS** defendants' motion to dismiss Counts II and IV of the complaint.[1]

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Mary Kaye Sutter ("Sutter") was an employee at the Portsmouth branch of defendant First Union Bank of Virginia, Inc. ("First Union"). Her personal supervisor from December, 1993, to January 24, 1994, was defendant Joan Corcoran ("Corcoran").[2] Sutter was the oldest employee at the Portsmouth branch and was within two years of receiving 100% of her retirement benefits. She alleges that she was subject to different employment conditions than her co-workers because of her age.

According to the complaint, on January 24, 1994, Corcoran accused Sutter of falsifying documents. Sutter denied any wrongdoing and explained that the conduct she was accused of committing was the normal and

---

**1.** Plaintiff subsequently withdrew her claim for intentional infliction of emotional distress, and the question of punitive damages is no longer before the court. *See infra* at —— and note 6.

**2.** The individual defendant's name is misspelled in the complaint as "Joan Cochran."

routine practice of all the tellers in the Portsmouth Branch. The other tellers allegedly agreed that what Sutter did with the documents was routine practice. Corcoran fired Sutter, despite these representations, but did not fire any of the other tellers who engaged in the same practice. Sutter claims that Corcoran's stated reason for firing her was a pretext and that she was actually fired due to her age and in order to interfere with her retirement benefits. After firing Sutter, Corcoran took Sutter's bank keys, grabbed Sutter against her will, and forcibly removed her from the bank. Sutter's vacant position was subsequently filled by a younger person with comparable or lesser qualifications to those of Sutter.

As a result of her termination, Sutter was only able to claim approximately 63% of her retirement benefits. She also alleges that she was extremely embarrassed and humiliated by the experience. She suffered loss of sleep, loss of self-esteem, depression, and extreme mental anguish. She lost her income and benefits, as well as the additional retirement income and retirement benefits which she would have received if her retirement plan were 100% vested.

In Count I, Sutter sues First Union for discrimination on the basis of age, in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634. In Count II, Sutter sues First Union for interference with pension benefits, in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461. In Count III, Sutter sues both First Union and Corcoran for intentional infliction of emotional distress. Finally, in Count IV, Sutter sues both First Union and Corcoran for assault and battery. Sutter requests for an injunction to prevent First Union from further age discrimination, back pay and benefits, front pay and benefits, liquidated damages, full retirement benefits, attorney's and expert's fees, compensatory damages in the amount of $350,000, punitive damages from each defendant in the amount of $350,000, costs, and prejudgment interest.

Defendants filed an answer to Sutter's compliant on April 30, 1996. That same day, defendants filed a motion to dismiss Counts II, III, and IV of the complaint and to dismiss plaintiff's claim for punitive damages. Defendants have not moved to dismiss Count I, the age discrimination claim. First, defendants argue that Count II, which alleges violations of ERISA, must be dismissed under Virginia's one-year, catch-all statute of limitations, Va.Code Ann. § 8.01–248. Second, they argue that Count III, for intentional infliction of emotional distress, must be dismissed for failing to allege the essential elements of that cause of action. Third, defendants argue that both Counts III and IV are barred by the exclusive remedies provision of the Virginia Workers' Compensation Act, Va.Code Ann. § 65.2–307. Fourth, Defendants argue that plaintiff's claim for punitive damages cannot stand in light of Virginia's $350,000 statutory cap on punitive damages. *See* Va.Code Ann. § 8.01–38.1.

On May 14, 1996, plaintiff filed a brief in opposition to defendant's motion to dismiss. The court heard argument on defendants' motion on July 11, 1994. The court issued its ruling from the bench and advised the parties that a written opinion would be forthcoming.

## II. ANALYSIS

### A. Standard of Review

When deciding whether to grant a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted, the factual allegations in the plaintiff's complaint must be accepted as true. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). A Rule 12(b)(6) motion should only be granted "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). When deciding a Rule 12(b)(6) motion, a court should only consider the pleadings, disregarding affidavits or other materials. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

### B. Defendants' Motion

Defendants raise four arguments in their motion to dismiss: (1) that Count II, for

violation of ERISA, is barred by the applicable statute of limitations; (2) that Count III fails to state a claim for intentional infliction of emotional distress; (3) that Counts III and IV are barred by the exclusive remedies provision of the Virginia Worker's Compensation Act; and (4) that plaintiff's claim of punitive damages is not recoverable under Virginia law. Plaintiff withdrew her claim for intentional infliction of emotional distress in response to defendants' motion to dismiss, as confirmed in open court on July 11, 1996. Therefore, discussion of defendants' second argument is unnecessary. Likewise, defendants' argument regarding punitive damages is not addressed, because it is mooted by the court's ruling that plaintiff's common law claim for assault and battery also must be dismissed.[3] Defendants' two remaining arguments are addressed below.

### 1. statute of limitations governing ERISA cause of action

■ Defendants insist that plaintiff's cause of action pursuant to ERISA § 510, 29 U.S.C. § 1140, is barred by Virginia's one-year, catch-all statute of limitations, Va.Code Ann. § 8.01–248. Plaintiff argues that the five-year statute of limitations for contract actions, rather than the one-year, catch-all statute of limitations, governs causes of action under ERISA.

Section 510 of ERISA provides:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act, or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act.

29 U.S.C. § 1140. Violations of section 510 are enforceable through the private cause of action created in section 502(a)(3), 29 U.S.C. § 1132(a)(3).

Section 502 is not governed by a specific ERISA statute of limitations. The courts, therefore, have instead looked to the "essence" of the ERISA violation at issue and applied the limitations period which governs the "most analogous" state law cause of action, in accordance with *Wilson v. Garcia*, 471 U.S. 261, 267–70, 105 S.Ct. 1938, 1942–44, 85 L.Ed.2d 254 (1985). *See, e.g., Dameron v. Sinai Hosp. of Baltimore, Inc.*, 815 F.2d 975, 981 (4th Cir.1987) (applying Maryland's contract statute of limitations to action alleging a violation of ERISA's nonforfeiture provision, 29 U.S.C. § 1053); *Shofer v. Hack Co.*, 970 F.2d 1316, 1319 (4th Cir.1992) (holding that Maryland's statute of limitations for ordinary civil actions applies to claim under ERISA, alleging that employer's benefit's manager failed to warn employee of tax consequences of taking his retirement benefits early).

The Fourth Circuit has not yet determined which state law cause of action is most analogous to a cause of action for violation of section 510 of ERISA. Other circuit courts, however, have dealt with this issue. Although these courts are not unanimous, the majority have construed section 510 actions as most analogous to wrongful discharge or employment discrimination claims. *See, e.g., Teumer v. General Motors Corp.*, 34 F.3d 542, 550 (7th Cir.1994) (applying Illinois' residual statute of limitations which governs common law actions for retaliatory discharge and rejecting, in the interest of uniformity, the argument that two separate limitations periods should apply to section 510 actions, depending upon whether the employee complains of forward-looking prevention or backward-looking retaliation); *Hinton v. Pacific Enterprises*, 5 F.3d 391, 394 (9th Cir.1993) (applying California statute of limitations for wrongful termination pleaded in contract), *cert. denied,* —— U.S. ——, 114 S.Ct. 1833, 128 L.Ed.2d 462 (1994); *Byrd v. MacPapers, Inc.*, 961 F.2d 157, 159 (11th Cir.1992) (applying Florida limitations period for discharge in retaliation for filing workers' compensation claim); *Felton v. Unisource Corp.*, 940 F.2d 503, 510–13 (9th Cir.1991) (applying Arizona statute of limitations that governs state

---

**3.** *See infra* at 758–60 and note 6.

causes of action for wrongful discharge in violation of public policy); *McClure v. Zoecon, Inc.*, 936 F.2d 777, 778–79 (5th Cir.1991) (applying state limitations period for employment discrimination and wrongful discharge); *Held v. Manufacturers Hanover Leasing Corp.*, 912 F.2d 1197, 1205 (10th Cir.1990) (applying New York statute of limitations for employment discrimination); *Gavalik v. Continental Can Co.*, 812 F.2d 834, 843–48 (3d Cir.) (applying Pennsylvania limitations period that governs claims of race-based discrimination), *cert. denied*, 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987). *But see Heideman v. PFL, Inc.*, 904 F.2d 1262, 1267 (8th Cir.1990) (applying contract limitations period), *cert. denied*, 498 U.S. 1026, 111 S.Ct. 676, 112 L.Ed.2d 668 (1991); *Clark v. Coats & Clark, Inc.*, 865 F.2d 1237, 1241–42 (11th Cir.1989) (applying Georgia statute of limitations for enforcement of a statutorily created right and rejecting personal injury comparison because the cause of action is more akin to a breach of contract action).

Only one reported opinion has considered which Virginia statute of limitations applies to causes of action under section 510 of ERISA. In *Adkins v. E.I. Du Pont De Nemours & Co., Inc.*, 1995 WL 704779 (D.Del.1995), the court, with little discussion, determined that the Virginia statute of limitations governing common law actions for wrongful termination, Va.Code Ann. § 8.01–248, applies to section 510 claims. *Id.* at *8. The court rejected the plaintiff's argument that the statute of limitations for contract actions is applicable. *Id.*

This court agrees with the court in *Adkins* and FINDS that Virginia's common law cause of action for wrongful discharge is most analogous to an action under section 510 of ERISA. An employee proceeding under section 510 is claiming that her employer fired her wrongfully, either to prevent her from obtaining retirement benefits or in retaliation for the employee's earlier exercise of her rights under a benefits agreement. Such a proceeding is almost identical to an action for wrongful discharge in violation of

public policy, where the plaintiff claims that her termination contravened the policy interests of the Commonwealth. *See Bowman v. State Bank of Keysville*, 229 Va. 534, 540, 331 S.E.2d 797, 801 (1985) (recognizing a public policy exception to the employment at will doctrine). A claim under section 510 that the employer terminated the employee in order to prevent her from obtaining retirement benefits does have some overtones of a breach of contract action, as the benefits at issue are typically contained in a written agreement between the employer and its employees. However, the wrongful discharge analogy is much closer, because a section 510 action, at its core, is a claim by the employee that she was fired for an improper purpose. Consequently, the court will apply the Virginia statute of limitations that governs wrongful discharge claims.

■ Wrongful discharge claims fall under Virginia's catch-all statute of limitations, Va. Code Ann. § 8.01–248, which, at the time this action accrued, provided a one-year limitations period.[4] *Purcell v. Tidewater Constr. Corp.*, 250 Va. 93, 95, 458 S.E.2d 291, 293 (1995) (holding that section 8.01–248 governs claims for wrongful termination in retaliation for filing a worker's compensation claim, pursuant to Va.Code Ann. § 65.2–308); *Costantino v. Jaycor*, 1987 WL 37097 (4th Cir.1987) (per curiam) (unpublished) (holding that section 8.01–248 governs Virginia common law wrongful discharge claims, pursuant to *Bowman*, 229 Va. at 540, 331 S.E.2d at 801); *Guiden v. Southeastern Public Serv. Authority of Vir.*, 760 F.Supp. 1171, 1179 (E.D.Va. 1991) (same). Plaintiff's cause of action accrued on the date she was terminated, January 24, 1994. *See, e.g., Held*, 912 F.2d at 1205 (stating that a cause of action under section 510 of ERISA accrues at the time of termination); *Heideman*, 904 F.2d at 1267 (same). She did not file this lawsuit until December 18, 1995. Plaintiff's claim under section 510 of ERISA, therefore, is time-barred.

**4.** Section 8.01–248 was amended in 1995 to provide a two-year limitations period for actions "accruing on or after July 1, 1995." In this case, plaintiff was terminated on January 24, 1994. Her case, therefore, is governed by the former section 8.01–248.

## 2. Virginia Worker's Compensation Act

Defendants argued that Counts III and IV, alleging intentional infliction of emotional distress and assault and battery, are barred by the exclusive remedies provision of the Virginia Worker's Compensation Act. Plaintiff argued that her claims are not barred because at the time of the incident she was not an employee within the meaning of the Act; therefore, the incident did not occur in the course of her employment.[5]

The exclusive remedies provision of the Virginia Worker's Compensation Act provides:

> The rights and remedies herein granted to an employee when his employer and he have accepted the provisions of this title respectively to pay and accept compensation on account of injury or death by accident shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin, at common law or otherwise, on account of such injury, loss of service or death.

Va.Code Ann. § 65.2–307. If an injury is covered by the Act, therefore, jurisdiction is vested solely in the Industrial Commission of Virginia. See, e.g., Perrin v. Brunswick Corp., 333 F.Supp. 221, 223 (W.D.Va.1971).

For an injury to be covered by the Act and for section 65.2–307 to bar recovery through a common law cause of action, the employee must have sustained an "injury." The Act defines "injury" as an "injury by accident arising out of and in the course of the employment." Va.Code Ann. § 65.2–101. To be covered by the Act, then, three conditions must be satisfied: (1) an injury by accident; (2) arising out of the employment; and (3) arising in the course of the employment. See, e.g., Graybeal v. Board of Supervisors, 216 Va. 77, 78, 216 S.E.2d 52, 53 (1975). The Virginia Supreme Court has repeatedly held "that the words 'arising out of an in the course of employment' should be liberally construed to carry out the humane and beneficent purpose of the Workmen's

Compensation Act." Brown v. Reed, 209 Va. 562, 563, 165 S.E.2d 394, 396 (1969).

The first condition to coverage is that the employee sustained "an injury by accident." For an injury to be considered "by accident," it must have occurred at a particular time and place, as opposed to cumulative injury from repetitive trauma. Morris v. Morris, 238 Va. 578, 589, 385 S.E.2d 858, 865 (1989). The act does, however, cover purely emotional harm, E.C. Womack, Inc. v. Ellis, 209 Va. 588, 592, 166 S.E.2d 265, 268 (1969), as well as injuries caused by an intentional or willful assault upon an employee by a co-worker or a third party. Continental Life Ins. Co. v. Gough, 161 Va. 755, 759, 172 S.E. 264, 266 (1934) (holding that assault upon an employee is an "injury by accident" within the meaning of the statute); Haigh v. Matsushita Elec. Corp. of Am., 676 F.Supp. 1332, 1352–54 (E.D.Va.1987) (Spencer, J.) (holding that Virginia does not recognize an intentional tort exception to worker's compensation coverage). But see McGreevy v. Racal–Dana Instruments, Inc., 690 F.Supp. 468, 470 (E.D.Va.1988) (Ellis, J.) (holding that injuries from intentional torts are not considered to be "by accident").

In this case, the first condition is satisfied. Plaintiff alleges that after she was terminated from her employment, Corcoran "grabbed" her against her will and "forcibly removed" her from the premises. Complaint ¶ 34. As a result, plaintiff alleges that she suffered embarrassment, humiliation, loss of sleep, loss of self-esteem, depression, and extreme mental anguish. Complaint ¶ 38. The assault and battery alleged by plaintiff is covered by the Act, see Continental Life Ins. Co., 161 Va. at 759, 172 S.E. at 266, and her resulting injuries are compensable under the Act, see E.C. Womack, Inc., 209 Va. at 592, 166 S.E.2d at 268. Plaintiff, therefore, sustained an "injury by accident."

The second condition is that the injury arose out of the employment. This second condition refers to causation: "a causal connection between work and injury." Graybeal, 216 Va. at 80, 216 S.E.2d at 54. The

---

5. Because plaintiff withdrew Count III for intentional infliction of emotional distress, see supra at ——, the court focuses the discussion in this section on Count IV for assault and battery. However, the same analysis would have applied to Count III.

Virginia Supreme Court discussed the meaning of "arising out of" in *Baggett Transp. Co. of Birmingham, Ala. v. Dillon,* 219 Va. 633, 248 S.E.2d 819 (1978):

> An injury arises out of the employment "'when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises "out of" the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workman would have been equally exposed apart fom [sic] the employment. The causative danger must be peculiar to the work and not common to the neighborhood.'"

*Id.* at 637–38, 248 S.E.2d at 822 (quoting *Bradshaw v. Aronovitch,* 170 Va. 329, 335, 196 S.E. 684, 686 (1938)).

The second condition to coverage is also met in this case. The assault and battery claimed by plaintiff resulted from allegations made by Corcoran that plaintiff falsified bank documents. Complaint ¶ 28. Corcoran then fired plaintiff and physically removed her from the bank. Complaint ¶ 31, 34. Every event in this scenario, the falsification of bank documents, the termination, and the removal from the bank, was work-related, and, therefore, arose out of the employment.

The relevant case law makes this point clear. For instance, in *Jefferson v. Georgia–Pacific Corp.,* 1985 WL 17883 (E.D.Va.1985), the plaintiff complained of abuse from other employees because be tried to racially integrate his workplace. The court held that the abuse arose out of the employment because the defendant's difficulties with the plaintiff were not personal, but rather arose purely out of work-related subjects. *Id.* at *2. The result would be different if Corcoran's actions were motivated by personal impulses.

*See Richmond Newspapers, Inc. v. Hazelwood,* 249 Va. 369, 373–74, 457 S.E.2d 56, 58–59 (1995) (holding that a supervisor's sexual assault upon an employee did not arise out of the employment, where the supervisor's actions were of a personal nature and not directed against the claimant as an employee or because of the employment); *City of Richmond· v. Braxton,* 230 Va. 161, 165, 335 S.E.2d 259, 262 (1985) (holding that co-worker's assault upon the employee did not arise out of the employment, where the co-worker "goosed" the employee while engaging in friendly horseplay on the job). In this case, however, plaintiff raises no allegations that Corcoran's actions were motivated by personal feelings or impulses.

 The third condition is that the injury arose during the course of the employment. The cases have established that the second condition, arising out of the employment, and the third condition, arising during the course of employment, are not synonymous and are used conjunctively; thus, "both conditions must be present before compensation will be awarded." *Baggett Transp. Co.,* 219 Va. at 637, 248 S.E.2d at 822. While "arising out of the employment" refers to causation, "arising in the course of the employment" refers to the time, place, and circumstances of the accident. *Graybeal,* 216 Va. at 80, 216 S.E.2d at 54. In *Conner v. Bragg,* 203 Va. 204, 123 S.E.2d 393 (1962), the Virginia Supreme Court discussed the meaning of the third condition:

> [T]he words "in the course of" refer to the time, place, and circumstances under which the accident occurred.... [A]n accident occurs in the "course of employment" when it takes place within the period of employment, at a place where the employee may be reasonably expected to be, and while he is reasonably fulfilling the duties of his employment or is doing something which is reasonably incidental thereto.

*Id.* at 208, 123 S.E.2d at 396. Because there is no such thing as an "instantaneous exit" from a place of employment, "in the course of the employment" includes a reasonable margin of time and space necessary to enter and exit the workplace. *See, e.g., Brown v. Reed,* 209 Va. 562, 568, 165 S.E.2d 394, 399 (1969)

(holding that employee's injury, which occurred as he was walking across the parking lot toward his place of employment, arose in the course of his employment).

In this case, the third condition is satisfied. Corcoran's assault upon plaintiff occurred during work hours, at the bank, and in circumstances surrounding plaintiff's employment. Plaintiff, however, argues that her injury is not covered by the Worker's Compensation Act because the assault occurred after her employment at the bank was terminated. Because she was no longer an employee of the bank, plaintiff argues, she should be able to seek common law remedies to redress her injuries. In support of this position, plaintiff notes that the Act defines "employee" as "[e]very person, including a minor, in the service of another under any contract of hire or apprenticeship." Va.Code Ann. § 65.2–101. Because plaintiff was not "in the service of another" at the time of the assault, she argues that her injury did not occur in the course of her employment.

Plaintiff's position lacks support. Defendants have cited several opinions of the Industrial Commission of Virginia, where the commission awarded benefits to a person whose employment was terminated prior to the accident. *Patrick v. Kings Palace, Inc.*, 52 O.I.C. 196 (1970); *Hobbs v. American Automobile Assoc.*, 59 O.I.C. 131 (1980); *Redman v. Mays*, 58 O.I.C. 300 (1978). In *Patrick*, for instance, the employee got into an argument with her employer concerning work. The employer evicted her from the building. She later returned to retrieve some personal belongings. This time, the employer threw her out of the door. The employee fell and broke her kneecap. It was not clear from the evidence whether the employee had been terminated before she was evicted. The Industrial Commission held that even if the employee "had in fact been discharged immediately prior to the time she was evicted from the building the injury would be compensable since coverage is af-

forded under the Virginia Compensation Law until such time as the employee is off of the employer's premises." *Patrick*, 52 O.I.C. at 196–97. The commission likewise held in *Hobbs* and *Reese* that an employee is covered by the Act for a reasonable period of time following termination to gather his personal effects and wind-up his affairs.

The court finds the reasoning in these Industrial Commission cases persuasive. As mentioned above, the Act is to be liberally construed in favor of coverage. *Brown*, 209 Va. at 563, 165 S.E.2d at 396. Furthermore, the Virginia Supreme Court has held on numerous occasions that the Act covers employees for a reasonable period of time before work and after quitting work for the day in which to enter and exit the workplace. *See, e.g., id.*, 209 Va. at 568, 165 S.E.2d at 399. The reasoning of these cases applies equally well to the situation at bar, where the injury occurred shortly after the employee was fired but before she left the employer's premises.

Accordingly, the court **FINDS** that all three conditions to coverage of plaintiff's injuries under the Virginia Worker's Compensation Act are satisfied. She is, therefore, precluded by the Act's exclusive remedies provision, Va.Code Ann. § 65.2–307, from seeking redress for her personal injuries in this court.[6]

### III. CONCLUSION

For the foregoing reasons, the court **GRANTS** defendant's motion to dismiss Counts II and IV of the complaint. The case proceeds forward on Count I only.

The Clerk is DIRECTED to send a copy of this Opinion and Order to counsel for plaintiff and to counsel for Defendants.

---

6. Defendants also argued that plaintiff's prayer for punitive damages must be dismissed under Va.Code Ann. § 8.01–38.1, which sets a $350,000 cap on punitive damages. Because plaintiff's state law causes of action have been either withdrawn or dismissed, the Virginia statutory cap no longer is of relevance in this case. The damages recoverable under Count I will be governed by federal law, as set forth in section 7(b) of the Age Discrimination in Employment Act of 1967, codified at 29 U.S.C. § 626(b).